[No. 8526.  Department Two.  August 8, 1910.]

EUREKA MINING, SMELTING & POWER COMPANY, *Respondent,*

v. M. A. LIVELY, *Appellant.*[1]

CORPORATIONS—FRAUD—TREASURY STOCK—MISAPPLICATION OF PRO-CEEDS—LIABILITY OF STOCKHOLDERS.  Where the promoters of a mining corporation conveyed the mines and property to the corporation in consideration of the stock, subscribed for and issued to themselves, application of the proceeds of treasury stock to repay advances for the purchase price of the mines and the cost of securing patents' is a fraud upon the corporation and the purchasers of treasury stock, the proceeds of which should have been used for development; and judgment against such promoters is properly entered for the sums so diverted.

CORPORATIONS—STOCK—TRANSFERS—INNOCENT PURCHASER — LIEN OF COMPANY.  A wife of a stockholder, taking his stock on a pre-existing debt, with full knowledge of how he acquired it, is not an innocent purchaser, and takes subject to the debt of her husband to the corporation for fraudulent diversion of the proceeds of treasury stock, where the by-laws prohibited transfers until the stockholder's debt to the company was first paid.

SAME—PRESUMPTION AS TO OWNERSHIP—ESTOPPEL.  Where stock was voted upon a by-law prohibiting transfers until indebtedness to the company was first páid, as the stock of one of the original subscribers then indebted to the company, it must be presumed to have been his stock at the time.

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered August 3, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover money wrongfully diverted by trustees and stockholders of a corporation.  Affirmed.

*Ben F. Tweedy* and *Elmer E. Halsey,* for appellant.

*John O. Bender,* for respondent.

MOUNT, J.—The defendants were promoters of the respondent corporation.  Prior to the organization of this corporation, the defendants secured options to purchase cer-

[1]Reported in 110 Pac. 425.

tain mining claims and water rights, for the price of $15,000. These options were assigned to the defendants L. D. Lively and C. O. Howard, in trust for the corporation which was to be formed. After the corporation was organized, the mining claims and water rights were deeded to the corporation. The corporation was organized under the laws of this state, with a capital stock of $2,000,000, divided into shares of the par value of one dollar each. The ten defendants each subscribed for 200,000 shares of the capital stock, and agreed that each should contribute 60,000 shares of stock to the treasury of the company to be sold for the purpose of developing the mining claims, thus leaving 600,000 shares of the capital stock in the treasury and 140,000 shares to each of the promoters.

The defendant C. O. Howard advanced the $15,000 necessary to purchase the mining claims. Thereupon the defendants, including Howard, entered into a writing, whereby they each agreed to transfer to Howard 4,000 shares of stock, to be sold by him and the proceeds thereof applied in repayment of the money advanced for the purchase of the mining claims and expenses of obtaining patents therefor, and said Howard was to account for any balance which might remain from the proceeds of such sale. These 4,000 shares of stock were charged on the books of the corporation against the stock account of each of the defendants, leaving a balance of 136,000 shares to the credit of each of the defendants, and the 40,000 shares thus contributed were credited to defendant Howard as trustee. Thereafter the treasury stock was placed on the market and sold at seventy-five cents per share, less fifteen per cent commission for selling the same. After stock had been sold to the amount of 40,000 shares at seventy-five cents per share, the trustees, who were then the original promoters, took the proceeds and applied it to the repayment of the $15,000 advanced by Howard for the purchase of mines, and also took the further sum of $9,970 which amount Howard had expended in obtaining patents for

the mining claims, and this sum was also repaid to Howard. Afterwards, when other directors were elected, this action was brought to collect from the original ten trustees and stock- holders the sum of money thus diverted from the treasury.

The appellant M. A. Lively intervened in the action, claim- ing to be an innocent purchaser for value of the stock of the defendant L. D. Lively, and also claiming that L. D. Lively was not indebted to the corporation. Upon the trial of the case, the trial court found that each of the original ten stockholders was indebted to the corporation in the sum of $2,497, being his proportionate share of the money taken from the treasury to pay the cost of the mining claims and for obtaining patents therefor, and that the corporation had a lien on the stock of each for that amount; and directed a sale of the 4,000 shares subscribed for that purpose first to be made, and then a sale of the remaining stock of each of the original trustees, if necessary, to pay the balance. The intervener only has appealed.

It is readily seen that each of the original stockholders obtained his stock without any consideration whatever. The evidence shows that the mines were paid for by Howard. Title was conveyed to the corporation in consideration of the capital stock of the company. Thereafter treasury stock, or stock belonging to the corporation, was sold, and the pro- ceeds diverted to reimburse Howard for the money which he had paid for the mines. So that the net result was that the promoters had their money returned to them, and they also had their stock, less 4,000 shares which had been transferred to the name of Howard as trustee. This stock was, however, issued to purchasers of the treasury stock. It needs no argu- ment or authority to show that this was a fraud upon the persons who purchased the treasury stock, the proceeds of which was to go into development and not to the purchase of the mines. These purchasers of treasury stock afterwards came into control of the corporation and caused this suit to be brought.

It is argued by the appellant that she is an innocent pur-
chaser of the stock of L. D. Lively, and also that this stock
is not liable for any debt owing by Mr. Lively to the corpora-
tion. It appears that L. D. Lively is the husband of the de-
fendant M. A. Lively, the intervener; that Mr. Lively trans-
ferred his stock to his wife on May 11, 1906, by assignment,
and no transfer has ever been made upon the books of the
company. The consideration for this assignment was
$20,000, which was at that time owing from Mr. Lively to his
wife. On the 12th day of June, 1906, at the regular annual
meeting of the stockholders of the corporation, a by-law was
passed which provided, among other things, as follows:

"The stock of the corporation shall be held for the in-
debtedness of the owner thereof to this company, and no
transfer of the same shall be made on the books of the com-
pany until said indebtedness shall first be paid."

Mr. Lively was not present, but he sent his proxy, and
the stock standing in his name was voted at the time this by-
law was passed. Mrs. Lively testified that she was fully
informed of the manner by which Mr. Lively acquired his
stock, and that she was aware of the whole transaction. Under
these facts we are satisfied that the court was right in con-
cluding that Mrs. Lively was not an innocent purchaser for
value. No new consideration passed at the time she pur-
chased the stock. She took the stock upon an existing debt,
and she was fully informed about the whole matter, and she
therefore took the stock with notice and held it subject to the
claims of the corporation, even if she obtained it before the
passage of the by-law. It may be that the corporation would
not be authorized to pass a by-law which would have a retro-
active effect, but in this case the stock had not been trans-
ferred upon the books of the corporation. It still stood in
the name of Mr. Lively. No request had been made for a
transfer at the time this by-law was passed. Mr. Lively, or
his agent, voted the stock at that meeting. It must be as-
sumed, therefore, that the stock at that time was the stock of

Mr. Lively and not that of his wife, and since she was not an innocent purchaser for value, she acquired no greater rights than her husband had.

The judgment of the trial court appears to be right, and it is therefore affirmed.

RUDKIN, C. J., PARKER, CROW, and DUNBAR, JJ., concur.